## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
### SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:                                                    INVOLUNTARY CHAPTER 7
**GREEN HILLS DEVELOPMENT**
**COMPANY, LLC**
*ALLEGED DEBTOR*                                   **CASE NO. 10-03274EE**

Hon. Douglas C. Noble                              Attorney for Alleged Debtor
602 Steed Road, Suite 200
Ridgeland, MS 39157

Hon. Jeffrey R. Barber                   Attorneys for the Credit Union Liquidity Services, LLC,
Post Office Box 427                                          Petitioning Creditor
Jackson, MS 39205-0427

Hon. Joseph P. Dirik
Hon. Toby L. Gerber
Hon. William R. Greendyke
2200 Ross Avenue, Suite 2800
Dallas, TX 75201-2784

Edward Ellington, Judge

### FINDINGS OF FACT
### AND CONCLUSIONS OF LAW
### ON THE (1) *MOTION TO DISMISS (#11);*
### (2) *RESPONSE TO MOTION TO DISMISS AND*
### *MEMORANDUM IN SUPPORT THEREOF (#29); (3) MOTION*
### *FOR SUMMARY JUDGMENT (#30); (4) REPLY IN SUPPORT OF*
### *MOTION TO DISMISS AND RESPONSE TO AND MOTION TO*
### *STRIKE, IN PART, MOTION FOR SUMMARY JUDGMENT (#38); AND*
### (5) *CREDIT UNION LIQUIDITY SERVICES, LLC'S: (A) MEMORANDUM*
### *BRIEF REPLYING IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT*
### *[DOCKET NO. 30]; AND (B) COMBINED OBJECTION TO MOTION TO STRIKE*
### *[DOCKET NO. 38] AND MEMORANDUM IN SUPPORT OF OBJECTION (#45 & #46)*

**THIS MATTER** came before the Court on the (1) *Motion to Dismiss (#11)* filed by Green Hills Development Company, LLC*; (2) Response to Motion to Dismiss and Memorandum in Support Thereof (#29)* filed by Credit Union Liquidity Services, LLC*; (3) Motion for Summary Judgment (*#30) filed by Credit Union Liquidity Services, LLC; (4) *Reply in Support of Motion to Dismiss and Response to and Motion to Strike, in Part, Motion for Summary Judgment (#38)* filed by Green Hills Development Company, LLC; and (5) *Credit Union Liquidity Services, LLC's: (A) Memorandum Brief Replying in Support of Motion for Summary Judgment [Docket No. 30]; and (B) Combined Objection to Motion to Strike [Docket No. 38] and Memorandum in Support of Objection (#45 & #46)*.  In the *Motion to Dimiss*, Green Hills Development Company, LLC seeks the dismissal of this involuntary petition for lack of standing or, in the alternative, on abstention grounds.

in the *Motion for Summary Judgment*, Credit Union Liquidity Services, LLC seeks entry of an order for relief against Green Hills Development Company, LLC.  After considering the pleadings, the briefs, the testimony and the evidence presented at the trial, the Court finds that the *Motion to Dismiss (#11)* filed by Green Hills Development Company, LLC should be denied, that the *Motion for Summary Judgment (#30)* filed by Credit Union Liquidity Services, LLC should be denied and that the involuntary petition should be dismissed on the merits.  The Court  further finds that the motion to strike included by Green Hills Development Company, LLC in its *Reply in Support of Motion to Dismiss and Response to and Motion to Strike, in Part, Motion for Summary Judgment* should be denied as moot.  Finally the Court defers ruling on the request of Green Hills Development Company, LLC for costs and damages under 11 U.S.C. § 303(i) for a later date.

### FINDINGS OF FACT

While there are many peripheral facts, the key facts involve a loan which was used to acquire

2

and to develop certain real property in Brandon, Rankin County, Mississippi. The basic facts are as follows:

On or about August 5, 2005, Credit Union Liquidity Services, LLC[1] (CULS) entered into a loan agreement (Loan Agreement) with Green Hills Development Company, LLC (Green Hills) in which CULS agreed to loan Green Hills up to $14,500,000.00. Green Hills used the loan proceeds to purchase and to develop certain real property in Brandon, Rankin County, Mississippi. In connection with the Loan Agreement, Green Hills executed a promissory note payable to CULS with a maturity date of August 5, 2008. As security for the loan, Green Hills granted CULS a deed of trust on approximately 403 acres.[2] At the closing of the Loan Agreement, CULS tendered to Green Hills $8,260,000.00, of which $8,250,000.00 was designated the "Acquisition Loan Amount."[3] The remaining amount committed by CULS under the Loan Agreement was $6,240,000.00.

In a transaction totally separate from the Loan Agreement with CULS and to further its attempt to develop the property, Green Hills formed the Stonebridge Public Improvement District (PID) in 2006.[4] Thereafter, the PID entered into a trust indenture in order to generate funds through the issuance of bonds in the amount of $22 million. The trustee under the indenture was the Bank

---

[1]At the time Green Hills Development Company, LLC entered into the transactions which are the subject of this matter, CULS was doing business as Texans Commercial Capital, LLC. In November of 2007, Texans Commercial Capital, LLC changed its name to Credit Union Liquidity Services, LLC. [Trial Exhibit A, *Affidavit of Marty Caplinger,* Exhibit A-1]. For purposes of this opinion and because the distinction is not relevant to the issues before the Court, the Court will use CULS.

[2]At the trial, the attorney for CULS stated that some of the property had been sold and that there remained approximately 282 acres which were subject to CULS's deed of trust. (Transcript, p. 52-53.)

[3]Trial Exhibit A, *Affidavit of Marty Caplinger,* p. 2.

[4] *See Public Improvement District Act,* Miss. Code §§ 19-13-1 to 19-13-51.

3

of the Ozarks.  The proceeds from the issuance of the bonds would be used by the PID to acquire real property and finance certain improvements.  The bondholders would be repaid by the PID from special assessments levied against the real property located within the PID.  Apparently all the real property within the PID includes the 403 acres owned by Green Hills which was subject to CULS's deed of trust.  However, no evidence was presented on this issue. The bonds were issued, and it appears that the money was used to make improvements to the real property.

Pursuant to the Loan Agreement, $5,500,000.00[5] was reserved for construction advances. The construction advances were to pay for costs associated with the improvement of the property, such as costs for labor, materials and other services.  Starting in June of 2006 and ending in August of 2007, Green Hills made seven Requests for Disbursement for Construction Advances (Construction Draws).  CULS funded all Construction Draws except for Construction Draw number seven.  In all, the Construction Draws funded by CULS total $4,455,566.92.[6]

Also during this same time period, several amendments were made to the original Loan Agreement between Green Hills and CULS.  As the result of two of these amendments, CULS's loan commitment was reduced from $14,500,000.00 to approximately $13,915,219.00,[7] and the maturity date was extended from August 5, 2008, to November 3, 2008.

From the time the Loan Agreement was entered into on August 5, 2005, until the note matured on November 3, 2008, Green Hills made payments on the loan, but did not satisfy the loan.

---

[5]This amount was later reduced to $4,915,219.00 by the first amendment to the Loan Agreement. *See* Trial Exhibit A, *Affidavit of Marty Caplinger,* p. 4.

[6]Trial Exhibit A, *Affidavit of Marty Caplinger,* pp. 3-4.

[7]Transcript, p. 17

4

As of the maturity date, Green Hills owed CULS a principal balance of approximately $8,074,348.57.[8]   Then in June of 2009, Green Hills made an additional principal payment in the amount of $530,712.00.   Therefore, as of the date of the trial, Green Hills has repaid CULS approximately $5,921,930.36 in principal.[9]

In late 2008 and/or early 2009, the relationship between Green Hills and CULS deteriorated. On March 12, 2009, Green Hills filed *Plaintiffs' Original Petition* (Complaint) in the District Court of Dallas County, Texas, 191st Judicial District, against CULS[10] (Texas Litigation).   The Complaint contained the following causes of action and/or requests for relief against CULS:   fraud, rescission/reformation, unconscionability, duress, promissory estoppel, equitable estoppel, breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, unjust enrichment, constructive trust, equitable subordination, permanent injunction, discharge of guarantors, conspiracy, and a request for an award of damages.   *See* Trial Exhibit 1, *Plaintiffs' Original Petition*.

As evidenced by the various pleadings filed and hearings held, the Texas Litigation was vigorously contested by all parties.   *See* Trial Exhibits 1 through 11 and Trial Exhibit 13.

On September 17, 2010, CULS filed an involuntary petition (Petition) under Chapter 7 of the Bankruptcy Code against Green Hills (hereinafter, Alleged Debtor).   CULS was the sole petitioning creditor.

---

[8]Trial Exhibit A, *Affidavit of Marty Caplinger,* p. 5.

[9]*Id.*

[10]The complaint was filed by Green Hills, Benjamin O. Turnage, and three other corporations: Heartland Development Company, LLC, Lennox Development, LLC and Provence Development, LLC.  The common link between all of these corporations is Mr. Turnage.

At some time in October of 2010, CULS removed the Texas Litigation to the United States District Court for the Northern District of Texas. The Texas Litigation was referred to the United States Bankruptcy Court for the Northern District of Texas and was assigned to the Honorable Barbara J. Houser, where it is currently pending.

On October 19, 2010, the Alleged Debtor filed its *Motion to Dismiss* (Motion). The Alleged Debtor asserts that CULS's claim is "subject to a bona fide dispute as contemplated in [11 U.S.C.] § 303, therefore it is not eligible to serve as a petitioning creditor. Dismissal of the involuntary petition is therefore proper since CULS lacks standing to file it."[11] As an alternative ground for dismissal, the Alleged Debtor states that the Court should abstain under 11 U.S.C. § 305[12] from hearing the matter. The Alleged Debtor also requests that CULS post a bond in accordance with § 303(e) to indemnify the Alleged Debtor for damages the Court may later order upon dismissal of the petition and requests "costs and damages" against CULS pursuant to § 303(i).

CULS filed its *Response to Motion to Dismiss and Memorandum in Support Thereof* (Response) on November 15, 2010. In its Response, CULS states that "1) the involuntary petition is well-plead, and thus the Motion should be denied under Fed. R. Civ. P. 12(b)(6); 2) CULS's claim is not contingent; 3) this case is clearly not a two-party dispute; 4) CULS's claim is not the subject of a bona fide dispute; and 5) there is no basis for abstention under 11 U.S.C. § 305."[13]

Also on November 15, 2010, CULS filed a *Motion for Summary Judgment* (MSJ) and a brief

---

[11]*Motion to Dismiss,* p. 1, October 19, 2010.

[12]Hereinafter, all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

[13]*Response to Motion to Dismiss and Memorandum in Support Thereof,* p. 1, November 15, 2010.

6

in support of its MSJ. In its MSJ, CULS alleges that "[t]he undisputed facts and summary judgment evidence in this case justify and warrant the entry of an order for relief under 11 U.S.C. § 303."[14]

The Alleged Debtor filed its *Reply in Support of Motion to Dismiss and Response to and Motion to Strike, in Part, Motion for Summary Judgment* on December 3, 2010. The Alleged Debtor states that the MSJ is seeking to have this Court resolve the Texas Litigation. "To the extent that the MSJ requests relief over and above a determination that [*sic*] as to whether a bona fide dispute exists, it is improper."[15]

Several responses/objections and briefs were subsequently filed by both parties. By consent of the parties, the Court set for trial on January 6, 2011, the Motion, the MSJ, the contested Petition and related pleadings. At the conclusion of the trial, the Court took the matter under advisement and instructed the parties to submit post-trial briefs. On January 18, 2011, both parties submitted post-trial briefs.

## CONCLUSIONS OF LAW

### I. Jurisdiction.

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(1).

### II. § 303.

Succinctly stated, the crux of the matter before the Court is whether CULS has met the

---

[14]*Motion for Summary Judgment,* p. 2, November 15, 2010.

[15]*Reply in Support of Motion to Dismiss and Response to and Motion to Strike, in Part, Motion for Summary Judgment,* p. 2, December 3, 2010.

7

requirements set forth in § 303 for the entry of an order for relief against the Alleged Debtor. This issue requires the Court to consider the following questions: Is the Alleged Debtor otherwise eligible to file a Chapter 7 case under § 303(a)? Does CULS have standing to file the Petition under § 303(b)? May an order for relief be entered under § 303(h), given that this is a contested case? The Court will address each of these questions in turn. In doing so, the Court notes that the petitioning creditor, CULS, has the burden of proving the requirements of § 303 by a preponderance of the evidence. *See In re Moss*, 249 B.R. 411, 418 (Bankr. N.D. Tex. 2000).

As a threshold matter, the Court notes that the parties have approached this matter from different angles. The Alleged Debtor in the Motion to Dismiss insists that CULS lacks standing to file the Petition under § 303(b) because CULS's claim against it is the subject of a bona fide dispute. On the other hand, CULS in its MSJ insists that it has satisfied all of the requirements for the entry of an order for relief in a contested case under § 303(h). In effect, the parties invoke § 303 at different stages. The Alleged Debtor focuses upon the issue of standing, whereas CULS focuses upon the merits of the Petition. Because the success of the Motion to Dismiss would render the MSJ moot, the Court will consider the standing issue first.

### A. § 303(a) Eligibility to be a debtor.

As previously noted, the first hurdle a petitioning creditor must overcome is whether the alleged debtor can be a debtor under Chapter 7 or 11 of the Bankruptcy Code. Section 303(a) states in pertinent part:

> **§ 303.  Involuntary cases**
>
> (a) An involuntary case may be commenced only under chapter 7 or 11 of this title, and only against . . .a corporation. . .that may be a debtor under the chapter under which such case is commenced.

11 U.S.C. § 303(a).

8

In the case at bar, CULS filed the Petition against the Alleged Debtor under Chapter 7. Pursuant to § 109, which defines eligibility for liquidation under the Bankruptcy Code, the Alleged Debtor is eligible to be a debtor under Chapter 7. Therefore, CULS has met its burden under § 303(a).

### B. § 303(b) Standing to file an involuntary petition.

Since the Alleged Debtor is eligible to be a debtor under Chapter 7, the Court must next determine if CULS has standing to file the involuntary petition under § 303(b). It is this issue that the Alleged Debtor focused most of its efforts at trial and in its pleadings. Section 303(b) states in pertinent part:

> **§ 303.  Involuntary cases**
>
> . . . .
>
> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title–
>> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount. . . .
>>
>> (2) if there are fewer that 12 such holders, . . .by one or more of such holders that hold in the aggregate at least $14,425 of such claims;

11 U.S.C. § 303(b)(1) and (2).[16]

Since CULS was the sole petitioning creditor, CULS must meet the requirements set forth in part (b) of § 303 by showing by a preponderance of the evidence that: (1) the Alleged Debtor has less than twelve creditors, (2) CULS's claim is not contingent as to liability, (3) CULS's claim is not

---

[16]The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended § 303(b)(1) to clarify that the bona fide dispute may relate either to liability on the claim or to the amount of the claim.

the subject of a bona fide dispute as to liability or amount, and (4) CULS's claim totals at least $14,425. "A creditor's eligibility to be a petitioning creditor is to be determined at the time of the case filing." *In re Smith*, 437 B.R. 817, 822 (Bankr. N.D. Tex. 2010) (citations omitted).

As to the issue of the number of creditors the Alleged Debtor has, the Alleged Debtor conceded that "Green Hills has less than twelve holders of claims that qualify under § 303(b) as petitioning creditors as of the date of the Petition."[17]

Because the remaining requirements of § 303(b)(2) refer to a "claim," the Court pauses here to note the Bankruptcy Code's definition of that term. For the purposes of a bankruptcy case, "claim" is defined in § 101(5). Section 101(5) states in pertinent part:

> **11 U.S.C. § 101. Definitions**
>
> . . . .
>
> (5) The term "claim" means–
>
> > (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; . . . .

11 U.S.C. § 101(5). The above definition of a claim is broad. Section 303(b) allows a petitioning creditor to commence an involuntary petition only if the claim meets its own narrower definition. In general, the claim must not be contingent, the subject of a bona fide dispute, or less than $14,425.

As to whether CULS's claim is contingent as to liability, "[a] claim is contingent as to liability if the debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event. . . ." *In re All Media Properties, Inc.,* 5 B.R. 126, 133 (Bankr. S.D. Tex. 1980), *aff'd,* 646 F. 2d 193 (5th Cir. 1981). In the case at bar, the Alleged Debtor's obligation

---

[17]*Brief in Support of Motion to Dismiss,* p. 6, fn. 1, October 19, 2010.

to pay came into existence when the Loan Agreement was entered into. Therefore, CULS's claim is not contingent as to liability.

The next issue under § 303(b) was the primary focus of the Alleged Debtor's presentation at trial: whether CULS's claim is subject to a bona fide dispute as to liability or amount. *In re Lough,* 57 B.R. 993, 995 (Bankr. E.D. Mich. 1986) (noting that in 1984, "the test for the standing of petitioning creditors was revised[18] to provide that holders of claims which are subject to bona fide disputes are barred from being petitioning creditors.")

In its Motion, the Alleged Debtor asserts that CULS's claim is subject to a bona fide dispute because of the pending Texas Litigation. At trial, however, the Alleged Debtor did not introduce any testimony contesting its liability as to the Loan Agreement. Instead, the Alleged Debtor submitted as an exhibit a copy of the *Plaintiff's Original Complaint* in the Texas Litigation in which the Alleged Debtor states: "The Green Hills loan was closed on or about August 5, 2005, . . . .Pursuant to the Promissory Note, [CULS] was obligated to loan $14.5 Million to Green Hills. Green Hills was obligated to repay the loan, with interest at a rate of 6.75%."[19] This exhibit does not support the Alleged Debtor's assertions. On the other hand, CULS submitted into evidence the August 4, 2005, Loan Agreement which was signed on behalf of the Alleged Debtor by "Ben O. Turnage, Manager."[20] In addition, CULS submitted excerpts from the August 12, 2009, deposition of Benjamin O. Turnage in which Mr. Turnage acknowledges that he signed the Loan Agreement on

---

[18][This refers to the statutory change implemented by the Bankruptcy Amendments and Federal Judgeship Act of 1984.]

[19]Trial Exhibit 1, *Plaintiffs' Original Complaint,* pp. 12-13.

[20]Trial Exhibit A, *Affidavit of Marty Caplinger,* Exhibt A-2.

behalf of the Alleged Debtor.[21]  This evidence supports CULS's view that its claim is not subject to a bona fide dispute.

"So long as the petitioning creditor has established that there is no dispute regarding the debtor's liability on the creditor's claim, the creditor has standing under section 303(b) to bring a petition."  *Chicago Title Insurance Co. v. Seko Investment, Inc. (In re Seko Investment, Inc.),* 156 F.3d 1005, 1008 (9th Cir. 1998).  The Court finds that CULS has established that there is no dispute regarding the Alleged Debtor's liability on CULS's claim.  In the absence of a dispute, there can not be a bona fide dispute as to CULS's claim under § 303(b).

Finally, as to the last requirement under § 303(b) there is no dispute that CULS's claim totals at least $14,425.

Having found that the Alleged Debtor is eligible to be a debtor under Chapter 7; that CULS may be the sole petitioning creditor; that CULS's claim totals at least $14,425; that CULS's claim is not contingent; and that CULS's claim is not subject to a bona fide dispute as to liability or amount, the Court finds that CULS has standing under § 303(b) to bring the Petition against the Alleged Debtor.  Consequently, the *Motion to Dimiss* should be denied.

### C. § 303(h) May an order for relief be entered?

Once it has been established that a putative debtor is eligible to be a debtor under Chapter 7 or 11 under § 303(a) and that a petitioning creditor has standing under § 303(b), the Court must reach the merits of the Petition by looking to § 303(h) to determine whether to enter an order for relief.  This requires consideration of the arguments raised by CULS in the MSJ and at the trial.

---

[21]Trial Exhibit B, *Deposition of Benjamin O. Turnage,* p. 28.

12

Rule 56 of the Federal Rules of Civil Procedure[22] provides that in order to grant a motion for summary judgment, the court must find that "[t]he pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Section 303(h) states in pertinent part:

**§ 303.  Involuntary cases**

. . . .

(h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if–

(1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount; . . . .

11 U.S.C. § 303(h).

Since the Alleged Debtor has controverted the filing of the involuntary petition, CULS must prove by a preponderance of the evidence (1) that the Alleged Debtor is generally not paying its debts and (2) that the debts are not subject to a bona fide dispute as to liability or amount.

### 1. Generally paying debts.

Under subsection (h) of § 303, CULS must first show that the Alleged Debtor was generally not paying its debts as they became due. This determination must be made as of the date CULS filed the Petition. *Subway Equipment Leasing Corp. v. Sims (In re Sims),* 994 F. 2d 210, 222 (5th Cir. 1993). The *Generally not paying* standard is not a form of an insolvency test. *Generally not paying*

---

[22]Federal Rule of Civil Procedure 56 is made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056.

13

is not a balance-sheet insolvency test based on a comparison of assets and liabilities. Because the test is whether the debtor is actually paying its debts as a general matter, not whether it could pay them based on a cash-flow analysis, the standard is not an "equity insolvency" standard either (although it bears a distinct similarity), since the "equity insolvency" standard considers whether the debtor *can* pay its debts, not whether it *is* paying its debts.

> . . . .

The Code does not define the term "generally not paying," and courts have had to fashion their own definition.  Despite a wide range of definitions among the courts, there is a general consensus that the determination of "generally not paying" should employ a multifactor test.  It is a factual, as distinguished from legal, determination. There is no single mathematical formula that can be used to determine whether the standard has or has not been met.  The diversity exhibited by those suffering financial distress calls for a broad definition rather than a mechanical test.

2 *Collier on Bankruptcy* ¶ 303.31, p. 303-93 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (footnotes omitted).

In *In re Smith,* 415 B.R. 222 (Bankr. N.D. Tex. 2009), the Honorable Harlin Dewayne Hale discussed what constituted "not paying debts as they come due" under § 303(h)(1).  Judge Hale explained that § 303(h) requires consideration of both the amount of the debts not being paid and the number of creditors not being paid.

> Thus, the alleged debtor may not be "generally" paying his debts as they come due when he is not paying one hundred percent of his debts to only one creditor, or paying most of his debts in number to small recurring creditors, but is not paying a few creditors that make up the bulk of his debts.

*Smith,* 415 B.R. at 231 (citations omitted).  In holding that the creditor had met its burden to establish that the debtor was generally not paying his debts as they came due, Judge Hale found that the facts as presented at the trial showed that the debtor was paying small recurring debts, but he was "not paying ninety-nine percent of his debts in aggregate amount."  *Id.*

The bankruptcy court in *In re Moss,* 249 B.R. 411 (Bankr. N.D. Tex. 2000), formulated a four-part test for making this analysis:  "(1) the number of unpaid claims; (2) the amount of such

claims; (3) the materiality of the non-payments; and (4) the debtor's overall conduct in her financial affairs."   *Id.* at 422.

As stated previously, CULS must prove by a preponderance of the evidence that at the time the Petition was filed, the Alleged Debtor was generally not paying its debts.  In an attempt to satisfy its burden, CULS presented evidence at trial concerning unpaid debts that the Alleged Debtor owed to itself and to three other creditors, the PID, Rankin County, and the Bank of Ozarks.  The Court will examine each debt in turn.

### a.  Debt to CULS.

CULS introduced into evidence the *Affidavit of Marty Caplinger*.[23]  Mr. Caplinger is the portfolio manager of CULS.  Attached as Exhibit 23 to Mr. Caplinger's affidavit is a loan transaction report which shows interest advances, loan disbursements and principal payments made under the Alleged Debtor's loan.  The Court finds from this evidence that CULS has met its burden under § 303(h)(1) to show that the Alleged Debtor was generally not paying its debt to CULS as it became due.

### b. Debt to PID and Rankin County.

At the trial, CULS admitted into evidence Exhibit D, *Summary of 2008 and 2009 [Special Assessments] and 2008 and 2009 Tax Assessments*[24] without objection from the Alleged Debtor.  Upon review of Exhibit D, it appears that the Alleged Debtor is delinquent in paying the Special Assessments owed to the PID and is delinquent in paying the ad valorem taxes owed to Rankin

---

[23]Trial Exhibit A.

[24]CULS lists the description of the exhibit as: *Summary of 2008 and 2009 Tax Assessments and 2008 and 2009 Tax Assessments*.  However, the exhibit is actually a summary of the special assessments owed to the PID and the tax assessments owed to Rankin County, Mississippi.

County, Mississippi.[25]  Since the Alleged Debtor did not object to the introduction of Exhibit D or

offer any testimony or proof to controvert Exhibit D, the Court finds that CULS has met its burden

under § 303(h)(1) to show that the Alleged Debtor was generally not paying its debt to the PID and

to Rankin County.

### c. Debt to the Bank of Ozarks.

As to the one remaining other creditor mentioned by CULS, the Bank of the Ozarks, the

Court finds that CULS has not met its burden under § 303(h)(1).  At trial CULS introduced into

evidence Exhibit C, the *Bank of the Ozarks, as Trustee's Motion to Lift the Automatic Stay to Allow*

*State Court Litigation to Continue Against the Debtor, Green Hills Development Company LLC,*

(Stay Motion).[26]  The Stay Motion was filed in this bankruptcy case on November 11, 2010.  The

Bank of the Ozarks (Bank) sought to have the automatic stay under § 362 lifted to continue a judicial

foreclosure suit it initiated on behalf of the bondholders of the PID, against the Alleged Debtor in

the Chancery Court of Rankin County, Mississippi. In its Stay Motion, the Bank asserted that the

Alleged Debtor, as the owner of the real property located within the PID, had failed to pay Special

Assessments to the PID, and therefore, the PID bonds were in default.  The Alleged Debtor filed a

response to the Stay Motion in which it controverted some of the allegations in the Stay Motion.[27]

After the Stay Motion was admitted into evidence at the trial, CULS did nothing more to

support the allegations made by the Bank against the Alleged Debtor.  The Bank's Stay Motion itself

states that the PID had filed a motion to dismiss the chancery court litigation in which it "claim[ed],

---

[25]The first page of Exhibit D lists the total amount of unpaid taxes and special assessments as $4,480,885.65.

[26]Trial Exhibit E.

[27]This Court entered an order on December 15, 2010, holding the Stay Motion and the Alleged Debtor's response in abeyance until after the Court has ruled upon the Alleged Debtor's Motion and CULS's MSJ.

*inter alia,* that the Bank of the Ozarks lacked the authority to foreclose on the Green Hills property."[28]  The Court finds that simply introducing a copy of a stay motion filed by the Bank does not meet CULS's burden of proving by a preponderance of the evidence under § 303(h)(1) that the Alleged Debtor was generally not paying its debt to the Bank.

### d.  Application of the four-part test.

Having found sufficient evidence that the Alleged Debtor was generally not paying its debts to CULS, the PID and Rankin County, the Court next considers the four-part test formulated in *Moss* for determining whether a debtor is generally paying its debts.  As stated in *Moss,* the first prong of the four-part test requires this Court to quantify "the number of unpaid claims" of the Alleged Debtor.  As noted previously, the Alleged Debtor conceded that it has less than twelve creditors. Although CULS proved by a preponderance of the evidence that it, the PID and Rankin County all hold unpaid claims of the Alleged Debtor, CULS did not provide the Court with proof to enable it to determine the total number of unpaid claims of the Alleged Debtor.  Stated another way, CULS did not provide proof that it, the PID and Rankin County were the only unpaid creditors of the Alleged Debtor.  CULS did not introduce into evidence a list of the Alleged Debtor's creditors nor did CULS call as a witness a principal or representative of the Alleged Debtor in order to elicit testimony about any debts owed by the Alleged Debtor to any other creditors.  *See, e.g., In re American Cotton Suppliers Int'l, Inc.,* No. 02-50003-7, 2002 Bankr. LEXIS 1972 (Bankr. N.D. Tex. Sept. 30, 2002) (tax returns, audited financial statements, bank accounts); *In re Moss,* 249 B.R. at 411 (affidavits regarding assets, settlement agreement, final judgment, trust agreement); *In re Staxxring, Inc.,* No. 10-30668-SGJ-11, 2010 WL 2218935 (Bankr. N. D. Tex. May 28, 2010)

---

[28]*Bank of the Ozarks, as Trustee's Motion to Lift the Automatic Stay to Allow State Court Litigation to Continue Against the Alleged Debtor, Green Hills Development Company LLC*, ¶ 3, p. 3, November 10, 2010.

(receipts and invoices, testimony of officer of debtor and of former employee); *Norris v. Johnson, (In re Norris),* 114 F.3d 1182, (5th Cir.), *cert. denied,* 522 US 935, 118 S.Ct. 343, 139 L.Ed. 2d 266 (1997) (testimony of debtor as to debts owed).   The Alleged Debtor was involved in a large construction project–it was attempting to develop over 400 acres of real property so there is a real possibility that the Alleged Debtor had other creditors.  Indeed, in addressing the Construction Draws submitted by the Alleged Debtor to CULS, Mr. Caplinger in his affidavit lists other potential creditors of the Alleged Debtor: Southern Rock, LLC, Aquaterra Engineering, LLC, Trent Rhodes and Merndrop-Wages, LLC.[29]

Proof of a general failure to pay "requires not only general information about the debtor's cash disbursements, but also about the due dates of its obligations, whether the debtor's nonpayment of a past due obligation is the result of an inability or an unwillingness to pay, and, if the latter, whether the debtor's dispute involves a substantial issue of fact or law." *Why Creditors File So Few Involuntary Petitions and Why The Number Is Not Too Small,* 57 Brook. L. Rev. 803, 837 (1991) (footnote omitted).  CULS did not produce any of the Alleged Debtor's cash disbursements or due dates of its obligations nor did CULS produce any evidence as to whether the Alleged Debtor had failed to pay any of its debts because of an inability to pay or an unwillingness to pay.  Consequently, without proof, the Court cannot determine the exact number of creditors the Alleged Debtor had at the time the Petition was filed.  Therefore, the Court cannot apply the first prong of the four-part test and determine "the number of unpaid claims" of the Alleged Debtor.

Without proof as to the total number of creditors and/or the number of unpaid claims of the Alleged Debtor, the Court cannot apply the remaining three prongs of the four-part test.  Specifically, the Court has no way of determining "(2) the amount of such claims; (3) the materiality of the non-

---

[29]Trial Exhibit A, *Affidavit of Marty Caplinger,* p. 3.

payments; and (4) the debtor's overall conduct in her financial affairs." *In re Moss,* 249 B.R. at 422.

The Court acknowledges that the amount of the debts allegedly owed by the Alleged Debtor to CULS, to the PID and to Rankin County, Mississippi, is considerable. Some courts have held that if the unpaid debts the debtor does not pay as they become due totals more than 50% of all of the debtor's debt, then a debtor is generally not paying its debts as they become due.[30] However, without proof of the total number of creditors and the amount of unpaid claims against the Alleged Debtor, the Court has no way of applying the 50% standard. In addition, the absence of such proof prevents the Court from determining how the Alleged Debtor conducted its financial affairs. The burden was on CULS to prove by a preponderance of the evidence that the Alleged Debtor was generally not paying its debts. Without proof as to the number of creditors and the amount of the debt owed, the Court cannot conclude that the Alleged Debtor was generally not paying its debts.

In summary, "[a] finding that a debtor is generally not paying its debts 'requires a more general showing of the debtor's financial condition and debt structure than merely establishing the existence of a few unpaid debts.'" *Liberty Tool & Manufacturing v. Vortex Fishing Systems, Inc. (In re Vortex Fishing Systems, Inc.),* 277 F.3d 1057, 1072 (9th Cir. 2002) (citation omitted). Other than establishing "the existence of a few unpaid debts," CULS has not provided the Court with a general showing of the Alleged Debtor's financial condition or the Alleged Debtor's debt structure. Consequently, the Court finds that CULS has not met its burden of proving by a preponderance of the evidence that the Alleged Debtor is generally not paying its debts as and when they become due as required by § 303(h)(1). CULS's failure to meet its burden in this regard constitutes grounds for denying the MSJ and dismissing the Petition on the merits in accordance with Rule 1013 of the

---

[30]*In re American Cotton Suppliers Int'l, Inc.,* No. 02-50003-7, 2002 Bankr. LEXIS 1972, pp. 68-69 (Bankr. N.D. Tex. Sept. 30, 2002)

Federal Rules of Bankruptcy Procedure.

## 2. Bona fide dispute.

As stated above, CULS has not met its burden under the first part of § 303(h)(1) of proving that the Alleged Debtor is generally not paying its debts as they become due. However, assuming arguendo that CULS has shown that the Alleged Debtor has generally not been paying its debts under the first part of § 303(h)(1), the Court finds that CULS has also failed to meet its burden to prove that the debt owed to CULS, is not subject to a bona fide dispute as to liability or amount under the second part of § 303(h)(1).

In the case at bar, the Alleged Debtor asserts that the Texas Litigation proves that there is a bona fide dispute as to the debt owed to CULS. Of course, CULS asserts that the Texas Litigation is insufficient to show that there is a bona fide dispute. This Court has already determined that no bona fide dispute exists as to CULS's claim for purposes of standing under § 303(b)(2). The determination under § 303(h) as to whether a bona fide dispute exists as to CULS's debt requires a different analysis.

The difference was discussed in the case of *In re Seko Investment, Inc.* There the debtor, Seko, was sued by a creditor in an attempt to collect on various notes. Seko then filed a counterclaim against the creditor. The creditor filed an involuntary petition against Seko, which Seko sought to dismiss. The Court of Appeals for the Ninth Circuit held that a counterclaim may not defeat a petitioning creditor's standing to file an involuntary petition under § 303(b), but a counterclaim may be relevant under § 303(h)(1). As the Ninth Circuit explained:

> This may lead to the peculiar result that a counterclaim isn't a "bona fide dispute" under section 303(b), but is a "bona fide dispute" under section 303(h)(1). This result comes about not because "bona fide dispute" has a different meaning in the two subsections, but because it modifies different terms. *Compare* 11 U.S.C. § 303(b) (referring to "a claim against such person that is not . . . the subject of a bona fide dispute"), *with id.* § 303(h)(1) (allowing an alleged debtor to avoid an

> involuntary filing when the "debtor's debts . . . are the subject of a bona fide dispute"). It could certainly be the case that an alleged debtor does not dispute its liability on a claim, but instead disputes whether it owes a debt overall, as Seko does here. This objection is properly dealt with under subsection (h), not subsection (b).

*In re Seko,* 156 F.3d at 1009-10, fn. 7.

Section 303(b) "merely requires that the claim not be subject to a bona fide dispute as to liability or amount, whereas [§ 303(h)(1)] addresses whether the debt is subject to a bona fide dispute as to liability or amount." 2 *Bankruptcy Litigation* § 11:10, p. 3 (2011). Under the Bankruptcy Code, "*debt* means liability on a claim." 11 U.S.C. § 101(12).

In reading its pleadings and briefs filed in the case at bar and in reading the exhibits from the Texas Litigation which were introduced into evidence, it is clear that the Alleged Debtor does not dispute that it entered into the Loan Agreement with CULS and that CULS has a claim against the Alleged Debtor for the amount loaned to it by CULS. Instead, the Alleged Debtor disputes its liability on the debt and/or the amount of the debt, which is exactly what § 303(h)(1) addresses.

CULS offered five exhibits at the trial, and rested its case. The exhibits CULS submitted are: (A) Affidavit of Marty Caplinger; (B) Excerpts of August 12, 2009, deposition of Benjamin O. Turnage; (C) Docket Sheet and Complaint for Judicial Foreclosure; (D) Summary of 2008 and 2009 [Special Assessments] and 2008 and 2009 tax assessments; and (E) Bank of the Ozarks, As Trustee's Motion to Lift Automatic Stay. These exhibits are the same exhibits attached to CULS's MSJ, except CULS added the Stay Motion as an exhibit at the trial.

At the trial, CULS focused its efforts on the standing issue of whether CULS had a claim that was subject to a bona fide dispute pursuant to § 303(b). CULS never fully addressed the issue of whether the debt owed to it by the Alleged Debtor was subject to a bona fide dispute under § 303(h)(1).

21

Admittedly, in its pleadings, CULS does cite § 303(h) or (h)(1) a total of four times.[31] However, CULS only discusses the first part of § 303(h)(1)–whether the Alleged Debtor is generally not paying its debts as they become due.  CULS ignores the second part of § 303(h)–whether there exists a bona fide dispute as to the liability or amount of the debt.

The Bankruptcy Amendments and Federal Judgeship Act of 1984 added the words "bona fide dispute" to § 303(b)(1) and (h)(1).[32]  "The primary purpose of amending § 303 to include the bona fide dispute language was to prevent creditors from using bankruptcy as a means of coercing alleged debtors to pay debts that the alleged debtor, in good faith, legitimately disputed." 2 *Bankruptcy Litigation* § 11:10, p. 1 (2011)

The Court of Appeals for the Fifth Circuit addressed for the first time the issue of what constitutes a bona fide dispute under § 303 in *In re Sims*, 994 F. 2d 210 (5th Cir. 1993).  In *Sims*, the Fifth Circuit adopted the objective standard as developed by the bankruptcy court in *In re Lough,* 57 B.R. 993 (Bankr. E.D. Mich. 1986).  In *Sims,* the Fifth Circuit held that "[u]nder that objective standard, the bankruptcy court must 'determine whether there is an objective basis for either a factual

---

[31]"[B]ecause an order for relief should be entered against Green Hills under 11 U.S.C. § 303(h)." *Motion for Summary Judgment,* ¶ 1, p. 1.

"[B]ecause an order for relief should be entered against Green Hills under 11 U.S.C. § 303(h)." *Memorandum Brief in Support of Motion for Summary Judgment,* p. 1.

"Moreover, entry of an order for relief is appropriate under 11 U.S.C. § 303(h)(1) because Green Hills is generally not paying its debts as they come due." *Memorandum Brief in Support of Motion for Summary Judgment,* p. 10.

"[U]nder section 303(h) of the Bankruptcy Code, this Court shall enter an order for relief if Green Hills Development Company, LLC is generally not paying its debts as they become due." *Post-Trial Memorandum Brief (A) in Support of Motion for Summary Judgment and (B) in Opposition to Motion to Dismiss,* p.2.

[32]Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. 98-353, Tit. 3 § 426(b)(1), 98 Stat. 333, 369 (July 10, 1984)

or a legal dispute as to the validity of the debt.'" *In re Sims,* 994 F. 2d at 221.   In applying the

objective standard, the Fifth Circuit then adopted the Eighth Circuit's methodology in *In re Rimell,*

946 F. 2d 1363 (8th Cir. 1991):

> [T]he petitioning creditor must establish a prima facie case that no bona fide dispute
> exists.  Once this is done, the burden shifts to the debtor to present evidence
> demonstrating that a bona fide dispute does exist.  Because the standard is objective,
> neither the debtor's subjective intent nor his subjective belief is sufficient to meet this
> burden.  The court's objective is to ascertain whether a dispute that is bona fide
> exists; the court is not to actually resolve the dispute.  This does not mean that the
> bankruptcy court is totally prohibited from addressing the legal merits of the alleged
> dispute; indeed, the bankruptcy court may be required to conduct a limited analysis
> of the legal issues in order to ascertain whether an objective legal basis for the
> dispute exists.  Finally, because the determination as to whether a dispute is bona fide
> will often depend . . . upon an assessment of witnesses' credibilities and other factual
> considerations, the bankruptcy court's determination in this regard is a factual finding
> that may be overturned on appeal only if it is clearly erroneous.  *Rimell,* 946 F. 2d at
> 1365 (citations omitted).

*In re Sims,* 994 F. 2d at 221.

Following the methodology adopted by the Fifth Circuit in *Sims,* CULS must establish a

prima facie case that no bona fide dispute exists as to the liability or amount of the debt.  The Court

finds that CULS has failed to meet its burden to show that a bona fide dispute does not exist as to

the liability or amount of the debt under § 303(h)(1).  Therefore, the burden did not shift to the

Alleged Debtor to "present evidence demonstrating that a bona fide dispute does exist." *Id.*  CULS's

failure to meet its burden in this regard constitutes additional grounds for denying its MSJ and

dismissing the Petition.

Even if CULS has established a prima facie case, the Court finds that upon review of the

evidence submitted by the Alleged Debtor, the Alleged Debtor has shown that a bona fide dispute

exists as to the liability or amount of the debt under § 303(h)(1) and that the Petition should be

dismissed.

As stated above, the Alleged Debtor contends that the Texas Litigation shows the existence

of a bona fide dispute, and the Alleged Debtor submitted exhibits at the trial to support this contention.  As directed by the Fifth Circuit in *Sims,* the Court reviewed the Texas Litigation to determine if a bona fide dispute as to the liability or amount of the debt exists.  In reviewing the Texas Litigation, the Court "is not asked to evaluate the potential outcome of a dispute, but merely to determine whether there are facts that give rise to a legitimate disagreement over whether money is owed, or, in certain cases, how much."  *In re Vortex Fishing,* 277 F.3d at 1066.  Here, the Court's role is to determine if there is a genuine issue of material fact that bears upon the Alleged Debtor's liability under the Loan Agreement.  It is the existence, not the resolution, of a dispute that governs the outcome of this matter.

As stated previously, the Complaint the Alleged Debtor filed in Texas asserted the following grounds:  fraud, rescission/reformation, unconscionability, duress, promissory estoppel, equitable estoppel, breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, unjust enrichment, constructive trust, equitable subordination, permanent injunction, discharge of guarantors, conspiracy, and a request for an award of damages.  Trial Exhibit 4 is a copy of the *Register of Actions* (Texas Court Docket) in the Texas Litigation.  While the Texas Court Docket is not easy to follow, it appears that from the time the Complaint was filed on March 12, 2009, until the last entry on the Texas Court Docket, on December 13, 2010, the parties filed approximately 27 motions, four of which were motions for summary judgment.  During that same time period, it appears that the Texas court held between 12 to 15 hearings on various matters.

The Alleged Debtor introduced as exhibits the transcripts from two of the hearings held in the Texas Litigation.  On several occasions the Texas judge made statements regarding the Alleged Debtor's various causes of action and the various motions filed, but it appears no written orders were ever entered by the Texas judge at that time.  In the following comments from an April 15, 2010,

hearing on several pending motions, the Texas judge discusses the application of several sections

of the Texas Business and Commerce Code to the grounds the Alleged Debtor pled in its Complaint:

> THE COURT: They're alleging fraud or fraudulent inducement.  That would, in
> effect, void the contract, not modify the terms.  So I think a fraud cause of action is
> viable.  I'm saying I think that a fraud claim can coexist with 26.02. [of the Texas
> Business and Commerce Code]  I do agree with you that the promissory estoppel on
> *[sic]* the equitable estoppel are barred by 26.02, but I go back to unconscionability,
> duress, and I think those exist separate from 22.02 because they're not trying to
> modify the terms of the contract; they're trying to remove the contract.  I mean,
> they're trying to say that a contract never existed.  Fiduciary duty I do think is a
> separate issue also.  I agree with you, though.  I think unjust enrichment, it goes to
> the same thing as promissory estoppel.  I think 26.02 bars that because that's a
> contract issue.  And I'll tell you one thing I don't know about and we're still debating
> over is the mistake issue because mutual mistake is – the problem is, the doctrine of
> mutual mistake is we both made a mistake, we intended it to be there, we didn't.
> 26.02 seems to bar that.  I mean, I think my ruling is going to have to be that 26.02,
> in my opinion, forecloses a mutual mistake cause of action.

Trial Exhibit 8, *Transcript of Proceedings Held on April 15, 2010*, pp. 69-70.

Then at the conclusion of the April 15, 2010, hearing, the Texas judge informed the parties

that:

> THE COURT:  [B]ecause I think some of the summary judgments can proceed,
> pursuant to like the DTPA [Texas Deceptive Trade Practices Act].  So to me, that's
> purely a matter of law.  Those can proceed. . . .I'll get you a letter written that says
> what I think we can and cannot proceed with based on the MSJs.  That should
> dramatically limit on the MSJs.

Trial Exhibit 8, *Transcript of Proceedings Held on April 15, 2010,* p. 125.

As she stated at the conclusion of the April 15, 2010, hearing, the Texas judge sent a letter

to the attorneys for the Alleged Debtor and CULS.  In the letter dated April 28, 2010, the Texas

judge stated the following:

> To all counsel:

> Upon reviewing all pleadings filed in this case, the Court makes the following
> rulings:

> 1. Plaintiff's Motion for Continuance of Defendants' Motion for Summary Judgment

25

is granted as to fraud, mutual and/or unilateral mistake, unconscionability, duress, breach of fiduciary duty, unjust enrichment, conspiracy, and breach of the duty of good faith and fair dealing.  It is denied as to the DTPA claims, promissory estoppel, and equitable estoppel.

2.  Defendants' Motion to Strike Jury Demand is granted as to Green Hills Development Company LLC, . . . .It is denied as to Heartland Development Co., LLC and Benjamin Turnage.  The Court orders that one trial will take place with the jury ruling on Heartland's and Turnage's causes of action and the court ruling on the remaining Plaintiff's causes of action.

Trial Exhibit 9, *Letter Ruling*, p. 1.

After the letter was sent to the parties, there does not appear to have been an order entered by the Texas judge regarding the first paragraph of her letter ruling.[33]  However it does appear that on July 12, 2010, the Texas court held a hearing and ruled on CULS's motions for summary judgment.  Trial Exhibit 13 is a copy of a cover letter dated July 13, 2010, and an *Order on Defendants' Motions for Partial Summary Judgment* from CULS's attorney to the clerk of the Texas court.  Basically, the cover letter states that pursuant to the court's ruling the day before, the attorney was submitting "the original and one copy of a proposed order for each ruling issued by the Court, . . . ."[34]  The proposed order attached to the letter provides in part:

Having considered the Motions, Plaintiffs' Response to the Motions, the summary judgment evidence, the pleadings, and the argument of counsel, the Court finds that the Motions should be GRANTED in part and DENIED in part as set forth herein. It is therefore,

ORDERED, ADJUDGED and DECREED that. . .Green Hills. . . shall take nothing on their claims against [CULS] for violation of the Texas Deceptive Trade Practices Act.

---

[33]It does appears that an order was entered as to the jury trial ruling issued by the Texas judge in paragraph 2 of her letter ruling.  Trial Exhibit 5 is a copy of a *Petition for Writ of Mandamus* filed by CULS with the Court of Appeals for the Fifth Court of Appeals District.  In the writ, CULS asks the appeals court to reverse Judge Slaughter's order which allowed a jury trial as to Heartland and Turnage.  A copy of the appeals court's order denying CULS's writ is included in Trial Exhibit 5.

[34]Trial Exhibit 13, *Letter and Order*, p. 1.

> It is further ORDERED, ADJUDGED and DECREED that Defendants' Motions as to the grounds of promissory estoppel and equitable estoppel are denied without prejudice and may be re-filed.

Trial Exhibit 13, *Letter and Order,* p. 2.

This order was not entered by the Texas judge until February 7, 2011. Indeed, the order was entered after the Texas Litigation had already been removed to the District Court in October of 2010, after the litigation was no longer pending before the Texas judge, and after the January 2011 trial before this Court. When questioned at trial about why the order had not yet been entered, neither CULS's attorneys nor the Alleged Debtor's attorneys proffered an explanation. Then, on February 9, 2011, the Alleged Debtor filed in this case a *Motion to Supplement Record*. Attached to that motion was a copy of the order that was signed by the Texas judge on February 7, 2011.[35]

The Court acknowledges that the validity of the late-filed order could be problematic for the Alleged Debtor if this Court were required to "evaluate the potential outcome of a dispute"[36] rather than to merely determine "whether there are facts that give rise to a legitimate disagreement over whether money is owed, or, in certain cases, how much."[37] However, relying alone on the transcripts from the Texas Litigation which were introduced into evidence, and without considering the late-filed order or the principles of issue and claim preclusion that may otherwise have applied, it does appear to this Court that the Texas judge found that portions of the Alleged Debtor's Complaint survived CULS's motions for summary judgment and that she was prepared to allow some of the

---

[35] There is no indication that the Texas Litigation was remanded before the entry of this order. *See* 28 U.S.C. § 1446(d); *see also Murray v. Ford Motor Co.,* 77 F. 2d 461, 463 (5th Cir. 1985) (state court ceases to have jurisdiction when state court has notice of removal). In any event, contemporaneously with this Opinion, the Court is entering an *Order Denying the Motion to Supplement Record.*

[36] *In re Vortex Fishing,* 277 F.3d at 1066.

[37] *Id.*

27

causes of action to proceed to trial.  In other words, the Court finds that the Texas judge, who held numerous hearings in the Texas Litigation over the nineteen months the case was pending before her, determined that there were facts which gave rise to a legitimate disagreement as to the liability and/or amount of debt the Alleged Debtor owed CULS.

CULS cites the case of *American Cotton Suppliers* in support of its position that the Texas Litigation does not raise a bona fide dispute.[38]  CULS states that the *American Cotton* case is factually analogous to the case at bar, and therefore, since the bankruptcy court in *American Cotton* found that there was no bona fide dispute, this Court should do likewise.  However as the Court stated above, the Texas judge who had been hearing the Texas Litigation for nineteen months believed that there is a factual dispute over the liability and/or amount of the debt owed to CULS and was prepared to allow some of the causes of action to proceed to trial.  Consequently, a bona fide dispute exists as to the liability or amount of the debt under § 303(h)(1).  Therefore, the two cases are not factually analogous, and the Court does not find the holding in *American Cotton* to be controlling to the facts of this case.

*Black's Law Dictionary* defines prima facie case as "1. The establishment of a legally required rebuttable presumption. . . . 2.  A party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor."  *Black's Law Dictionary* 1310 (9th ed. 2009.  After considering the pleadings, the exhibits, the testimony and the arguments of counsel, the Court finds that CULS has not met its burden to "establish a prima facie case that no bona fide dispute exists"[39] as to the liability or amount of the debt under § 303(h)(1).  Therefore, the MSJ

---

[38]CULS does not state whether it is referring to a bona fide dispute as to the claim under § 303(b) or as to the debt under § 303(h).

[39]*In re Sims,* 994 F. 2d at 221.

should be denied.  Nevertheless, the Alleged Debtor has proven that a bona fide dispute exists as to the liability or amount of the debt under § 303(h)(1), and that, therefore, the Petition should be dismissed.

Since the Court has denied the MSJ, the motion to strike included in the Alleged Debtor's *Reply in Support of Motion to Dismiss and Response to and Motion to Strike, in Part, Motion for Summary Judgment* should be denied as moot.

### III. § 305 Abstention.

In its Motion, the Alleged Debtor also raised abstention pursuant to § 305.  Having found that CULS has not met its burden to show that the Alleged Debtor is generally not paying its debts or to show that its debt is not subject to a bona fide dispute under § 303(h)(1), and that therefore, the Alleged Debtor's MSJ should be denied and the Petition should be dismissed, the Court will not address the Alleged Debtor's request for abstention pursuant to § 305.

### CONCLUSION

In order for an involuntary petition to withstand a motion to dismiss, the petitioning creditor must first prove under § 303(a) that a putative debtor may be a debtor under Chapter 7 or 11.  Next, the petitioning creditor must prove that it has standing to file the involuntary petition under § 303(b)(1) or (2):  that the requisite number of creditors filed the involuntary petition and that the claim(s) of the petitioning creditor(s) is not contingent and not subject to a bona fide dispute.  If the petitioning creditor has carried its burden under § 303(a) and (b), then for an order for relief to be granted, the petitioning creditor must meet the requirements of § 303(h)(1) and prove that the putative debtor is generally not paying its debts as they become due and that those debts are not subject to a bona fide dispute as to liability or amount.

In the case at bar, CULS met its burden with regard to § 303(a) and (b).  However, CULS did

not present sufficient proof that the Alleged Debtor was generally not paying its debts as they became due.

Further, CULS did not meet its burden of showing that its debt was not subject to a bona fide dispute as to liability or amount under § 303(h)(1).  Consequently, the Court finds that the *Motion to Dismiss* and the *Motion for Summary Judgment* should be denied, but that the contested Petition filed against the Alleged Debtor should be dismissed on the merits.

The request made by the Alleged Debtor costs and damages under § 303(i) may be brought on for hearing before the Court at a later date.

A separate judgment consistent with this opinion will be entered in accordance with Rules 7054, 9014 and 9021 of the Federal Rules of Bankruptcy Procedure.